# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALLAN NIP,<br><br>Defendant | Criminal No. 24cr10276<br><br>Violation:<br><br>Count One: Violation of National Defense Airspace<br>(49 U.S.C. §§ 46307 and 40103(b)(3))<br><br>Forfeiture Allegation:<br>(6 U.S.C. § 124n(c) and<br>28 U.S.C. § 2461) |

INFORMATION

COUNT ONE
Violation of National Defense Airspace
(49 U.S.C. §§ 46307 and 40103(b)(3))

The Acting United States Attorney charges:

On or about April 15, 2024, in Boston, in the District of Massachusetts, the defendant,

ALLAN NIP,

did knowingly and willfully, and without lawful authority, operate an unmanned aircraft system, to wit a DJI Mavic 3 with Serial Number 1581F45T7227B00SU049, within restricted National Defense Airspace, to wit within an area subject to a Temporary Flight Restriction prohibiting unmanned aircraft system operations near the finish line of the 128th Boston Marathon as set forth in Notice To Air Missions 4/8918.

All in violation of Title 49, United States Code, Sections 46307 and 40103(b)(3).

FORFEITURE ALLEGATION
(6 U.S.C. § 124n(c) and 28 U.S.C. § 2461(c))

The Acting United States Attorney further alleges:

1. Upon conviction of the offense in violation of Title 49, United States Code, Sections 46307 and 40103(b)(3), set forth in Count One, the defendant,

ALLAN NIP,

shall forfeit to the United States, pursuant to Title 6, United States Code, Section 124n(c) any unmanned aircraft system or unmanned aircraft described in Title 6, United Staes Code, Section 124n(a) and seized pursuant to Title 6, United Staes Code, Section 124n(b). The property to be forfeited includes, but is not limited to, the following asset:

    a. a DJI Mavic 3 with Serial Number 1581F45T7227B00SU049 and controller.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 6, United States Code, Section 124n(c), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 6, United States Code, Section 124n(c) and Title 28, United States Code, Section 2461(c).

_____
JOHN T. McNEIL
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

Digitally signed by JOHN MCNEIL
Date: 2024.09.07 20:58:06 -04'00'

Dated: SEPTEMBER 9, 2024

# Criminal Case Cover Sheet   U.S. District Court - District of Massachusetts

**Place of Offense:**  Category No. __III__   Investigating Agency __FBI__

**City** __Boston__    Related Case Information:

**County** __Suffolk__    Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  __Allan Nip__   Juvenile: ☐ Yes ☑ No

Is this person an attorney and/or a member of any state/federal bar:  ☐ Yes ☑ No

Alias Name _____

Address (City & State) __Boston, Massachusetts__

Birth date (Yr only): __1994__  SSN (last4#): _____  Sex __M__  Race: __Asian__  Nationality: __USA__

**Defense Counsel if known:** _____   Address _____

**Bar Number** _____

**U.S. Attorney Information:**

AUSA __John T. McNeil__   Bar Number if applicable __550473__

**Interpreter:** ☐ Yes ☑ No   List language and/or dialect: _____

**Victims:** ☐ Yes ☑ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2) ☐ Yes ☑ No

**Matter to be SEALED:** ☐ Yes ☑ No

☐ Warrant Requested   ☑ Regular Process   ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____.
☐ Already in State Custody at _____ ☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by: _____ on _____

**Charging Document:**  ☐ Complaint  ☑ Information  ☐ Indictment

**Total # of Counts:**  ☐ Petty  ☑ Misdemeanor __1__  ☐ Felony

Continue on Page 2 for Entry of U.S.C. Citations

☑ I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 9/7/2024   Signature of AUSA: *[signed]*  Digitally signed by JOHN MCNEIL  Date: 2024.09.07 21:38:47 -04'00'

Case 1:24-cr-12375-PGL Document 2-1 Filed 09/17/24 Page 2 of 2
Case 1:24-cr-12375-PGL Document 1-1 Filed 09/09/24 Page 6 of 14
JS 45 (5/97) (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk):

**Name of Defendant**     Allan Nip

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 49 U.S.C. §§ 46307 and 4010 | Violation of National Defense Airspace | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** This is a misdemeanor information. A deferred prosecution agreement will be filed once this matter is docketed.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 1:24-cr-10276 |
| v. | ) |
| | ) |
| ALLAN NIP, | ) |
| | ) |
| Defendant. | ) |

## DEFERRED PROSECUTION AGREEMENT

1. This Deferred Prosecution Agreement (the "Agreement") is made between the Acting United States Attorney for the District of Massachusetts ("USAO") and Defendant Allan Nip ("Defendant").

### Acceptance of Responsibility

2. Defendant acknowledges that the USAO has independently developed evidence during its investigation sufficient to establish beyond a reasonable doubt the facts described in the attached Statement of Agreed Facts, and Defendant accepts responsibility for this conduct. Defendant stipulates to the accuracy of Statement of Agreed Facts. Defendant agrees that he will not contest either the admissibility into evidence or the accuracy of the Statement of Agreed Facts in any subsequent criminal proceedings that may occur in the event of a breach of this Agreement. Defendant further agrees that he will not himself or through any agents, including present or future attorneys, make any public statements contradicting any of the facts as set forth in the Statement of Agreed Facts. Any such contradictory statement shall constitute a material breach of this Agreement.

### Deferral of Prosecution

3. Absent a material breach by Defendant of his obligations under this Agreement, the USAO will file a dismissal of the charges in the Information twelve months after this

Initialed: __AN__

1

agreement is approved by the Court, and the USAO will bring no additional charges against Defendant relating to the conduct described in the Information and the Statement of Agreed Facts.

4. This Agreement does not protect Defendant from prosecution for any crimes except those arising from the conduct described in the Information and the Statement of Agreed Facts; it does not apply to any individual or entity other than Defendant.

5. The USAO and Defendant (the "Parties") understand that this Agreement is subject to the Court's approval in accordance with 18 U.S.C. § 3161(h)(2); specifically, the parties must obtain Court's approval, under the Speedy Trial Act, of the delay of Defendant's trial on the Information in order to allow Defendant sufficient time to demonstrate his good conduct. Should the Court for any reason decline to approve the deferral of prosecution, the Parties shall be released from any and all obligations under this Agreement, and this Agreement shall be null and void.

Defendant's Responsibilities:

a. Criminal Penalty and Forfeiture

6. Defendant agrees to pay a criminal penalty in the amount of $5,000. This penalty shall be paid to the Clerk of the United States District Court for the District of Massachusetts within 30 days of the Court's approval pursuant to 18 U.S.C. § 3161(h)(2).

b. Civil Forfeiture

7. Defendant agrees that the conduct described herein and in the attached Statement of Agreed Facts is sufficient to establish that the DJI Mavic 3 with Serial Number 1581F45T7227B00SU049, seized by the Federal Bureau of Investigation ("FBI") on or about April 15, 2024, and its Controller (together, the "Property"), is subject to civil forfeiture to the

2

Initialed: AN

United States and that this Agreement and Statement of Agreed Facts may be attached to an incorporated into the Civil Forfeiture Complaint, a copy of which is attached hereto. Defendant agrees to turn over the controller to the FBI within 10 days of executing this agreement. Defendant agrees to waive service of the Civil Forfeiture Complaint; to consent to the entry of all orders of forfeiture for the Property; to refrain from filing a claim with the Court or otherwise contest the civil forfeiture of the Property; to assist fully in the forfeiture of the Property, to promptly take all steps necessary to pass clear title to the Property to the United States; and not to assist any third party in asserting any claim to the Property. Defendant further agrees to waive all constitutional, legal, and equitable challenges to the seizure and forfeiture of the Property. In the event that a third party successfully challenges the forfeiture of or establishes an ownership interest in the Property in connection with the civil forfeiture action, such that the United States is unable to obtain a final order of forfeiture of the Property, Defendant agrees to pay an additional $4,000 penalty to the Clerk of the United States District Court for the District of Massachusetts in lieu of the forfeiture of the Property.

Breach of the Agreement

8. Should the USAO, in its sole discretion, which is not and shall not be subject to appeal or review, determine that Defendant has: (a) knowingly given false, incomplete or misleading information to any law enforcement officials; (b) engaged in any acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice; (c) otherwise knowingly and materially breached any provision of this Agreement; or (d) committed any crimes before completing all obligations under this Agreement, the USAO may terminate this Agreement by written notice to Defendant.

3

Initialed: AN

9. After such notice, the USAO may, in its sole discretion, prosecute Defendant for the offenses charged in the Information and any other offenses arising from the facts included in the Statement of Agreed Facts. Moreover, with respect to any prosecution of the charges in the Information or of offenses based on conduct in the Statement of Agreed Facts that are not time-barred by the applicable statute of limitations (or any other legal, equitable or constitutional basis upon which a prosecution may be time-barred) as of the date of this Agreement, Defendant agrees to waive venue and any legal or procedural defects in any pertinent charging document related to such offenses or conduct.

10. Defendant agrees that if the USAO determines that Defendant has committed a material breach, Defendant will neither contradict the contents of the Statement of Agreed Facts nor challenge the factual or legal sufficiency of the Information.

11. Defendant agrees that the consequences for a breach set forth in this Agreement are remedies to which the USAO is entitled in the event of a breach and shall survive the termination of this Agreement in the event of a breach. Defendant further agrees that the USAO's remedies for a breach are not limited to those set forth in this Agreement. Defendant further agrees that in the event of a breach, Defendant shall nevertheless be bound by his waivers of any legal, equitable or constitutional rights set forth in this Agreement, and those provisions shall survive even in the event of a breach.

<u>Agreement Binding Only on Defendant and USAO</u>

12. The Parties understand and acknowledge that this Agreement is binding on Defendant and the USAO, but specifically does not bind any other components of the U.S. Department of Justice, federal agencies, or any state or local law enforcement or authorities.

4

Initialed: AN

Further, the waivers and other agreements made by Defendant herein shall not be binding upon Defendant in any civil or criminal proceeding initiated by any state or local government.

Miscellaneous

13. Nothing in this Agreement restricts in any way the ability of the USAO to proceed against any individual or entity not a party to this Agreement.

14. Defendant and the USAO agree that this Agreement, the Information, the civil forfeiture complaint, and the attached Statement of Agreed Facts, shall be made available to the public.

15. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same Agreement. Signatures of the Parties transmitted by facsimile or e-mail shall be deemed to be their original signatures for all purposes.

Complete Agreement

16. This Agreement, including the attached Statement of Agreed Facts, constitutes the entire agreement between the Parties, and supersedes all prior agreements or understandings, both oral and written, with respect to the subject matter hereof and the disposition of this case. No promises, representations or agreements have been made other than those set forth in this Agreement. This Agreement can be modified or supplemented only in a written memorandum signed by the Parties or by express agreement of the Parties on the record in court.

SO AGREED.

JOSHUA S. LEVY
Acting United States Attorney

By: s/ Nadine Pellegrini
Nadine Pellegrini
Chief, National Security Unit

Initialed: AN

5

<u>s/ John T. McNeil</u><br>
John T. McNeil<br>
Assistant United States Attorney

Date: September 7, 2024

## ACKNOWLEDGMENT OF DEFERRED PROSECUTION AGREEMENT

    I have read the Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, in its entirety. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations concerning the disposition of this case have been made to me by any official of the United States. I acknowledge that the terms and provisions of this Agreement have been fully explained to me, including, without limitation: the legal, equitable and constitutional rights I am waiving under this Agreement; that I have had a full and complete opportunity to consult with legal counsel and to ask any questions about the terms and provisions of this Agreement; that I fully understand the terms and provisions of this Agreement; that my agreements and waivers stated herein are knowing and voluntary. I acknowledge that I may have counsel represent me and I have chosen not to be represented by counsel. I am entering into this Agreement freely, voluntarily, and knowingly.

_____<br>
ALLAN NIP<br>
Defendant

Date: 9/10/24

6

Initialed: AN

## Attachment A – Statement of Agreed Facts

1. The 128th running of the Boston Marathon was scheduled to be held on April 15, 2024. The start line of the marathon was in Hopkinton, Massachusetts, and the finish line of the marathon was in downtown Boston on Boylston Street between Exeter and Dartmouth Streets. Prior to the running of the marathon, law enforcement and counterterrorism authorities designated the event a "SEAR-1," the highest level special event. SEAR-1 events are "significant events with national and/or international importance that require extensive federal interagency support."

2. In connection with the designation of the 128th Boston Marathon as a SEAR-1 event, the U.S. Federal Aviation Administration ("FAA") issued two temporary flight restriction zones for unmanned aircraft systems (referred to herein as "drones") pursuant to its authority under 14 C.F.R. § 99.7. All drones, regardless of weight, qualify as unmanned aircraft systems subject to the flight restrictions. One of those temporary flight restriction zones centered on the finish line of the marathon and extended 2.5 nautical miles in all directions. The restrictions in that zone commenced at 5:30 a.m. on April 15, 2024, and continued until 7:59 p.m. on that day.

3. A notice containing information essential to flight operations was issued by the FAA on or about April 10, 2024, warning drone operators and others of restrictions to the airspace around the Boston Marathon. *See*, Notice to Air Missions ("NOTAM") 4/8918. NOTAMs are made available to the public in a variety of ways such as on the FAA's website and through various mobile applications. The FAA recommends that drone operators check the FAA's website, Low Altitude Authorization and Notification Capability (LAANC) applications, or B4UFLY applications for temporary flight restrictions in their area of operation. In addition to the FAA's issuance of this notice, manufacturers of certain drones, including the manufacturer of the drone flown by Allan Nip, the defendant in this case, incorporate into their operating systems warnings issued by the FAA. In this case, the controller screen of the Mavic 3 operated by the defendant listed warnings of the flight restrictions on the screen of the drone controller. In order for the defendant to operate his drone that day in downtown Boston, he would need to acknowledge the warning issued to him through his controller. In addition, a simple internet search on or about April 15, 2024, would have resulted in news stories as well as information from the Boston Athletic Association noting that "[t]he use of drones (unmanned aerial vehicles) anywhere in the area of the course, including above runners and spectators, is prohibited."

4. On April 15, 2024, just after 9:00 a.m. the men's and women's wheelchair racers started the Boston Marathon in Hopkinton, Massachusetts. The professional men runners started shortly thereafter at approximately 9:37 a.m. At approximately 11:15 a.m. (EDT) law enforcement monitoring the airspace near the finish line of the Boston Marathon detected a drone in operation in Boston's South End near Huntington Ave and Harcourt St, approximately 380 meters from the Boston Marathon finish line. At the time, wheelchair racers were still crossing the finish line. When the drone was detected, it was flying generally due north, getting closer to the Marathon finish line The drone was intercepted by law enforcement and forced to land at a

Def. Initials: **AN**

predetermined location atop the garage at 100 Clarendon Street. Upon landing, the drone was inspected by Special Agents from the FBI Boston Field Office for explosive devices or other threats. It was then seized and placed into evidence. The drone was identified as a DJI Mavic 3 with Serial Number F45T7227B00SU049. At the time the drone was detected by law enforcement near the Boston Marathon finish line, the professional men runners were approximately 20 minutes from the finish line.

5. Law enforcement determined that the drone was being operated from 213 West Springfield Street, Boston, MA. Uniformed Boston Police officers were dispatched to that location at approximately 11:20 a.m. Boston Police Officers encountered the defendant, Allan Nip, in Apartment 3 at 213 West Springfield Street. The defendant admitted that he had been operating the drone prior to losing control of it. He told officers he owned the drone with his brother. He also told officers he was seeking to take images of the Boston Marathon that day.

6. Pursuant to applicable regulations, the drone was required to be registered with the Federal Aviation Administration. *See* 14 C.F.R. Part 48. In addition, pursuant to applicable regulations, both recreational and commercial drone operators are required to mark the exterior of their drones with the registration number. *Id.* A review of the FAA records revealed that the drone had not ever been registered with the FAA. When the drone was seized on April 15, 2024, it did not display a registration number as required.

7. Pursuant to applicable regulations, the defendant was required to have a FAA-issued airman certificate to operate the drone. *See* 14 C.F.R. Part 107. A review of the FAA records revealed that Allan Nip had never held an FAA-issued airman certificate to operate a drone.

8. At the time the defendant flew the drone near the finish line of the Boston Marathon, he violated the FAA's temporary flight restriction. That temporary flight restriction designated the area within 2.5 nautical miles of the Boston Marathon finish line as National Defense Airspace and prohibited all unmanned aircraft systems flight operations in that airspace (except those expressly exempted, which did not include the defendant's unauthorized flight operation). *See* 14 C.F.R. §§ 99.7 and 107.47; NOTAM 4/8918. The defendant knowingly and willfully, and without lawful authority, operated an unmanned aircraft system in a restricted National Defense Airspace near the finish line of the Boston Marathon on April 15, 2024.

Def. Initials: AN